USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:  9/9/2020

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**NEW YORK MARINE AND GENERAL**
**INSURANCE COMPANY,**

                    **Plaintiff,**

      **-v.-**

**TRAVELERS PROPERTY CASUALTY**
**COMPANY OF AMERICA,**

                 **Defendant**

**19-CV-1728 (ALC)**

**OPINION & ORDER**

---

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff New York Marine and General Insurance Company ("NY Marine") brings this action against Defendant Travelers Property Casualty Company of America ("Travelers") to resolve an insurance coverage dispute related to a personal injury by an employee of D'Onofrio General Contractors Corp. ("D'Onofrio").  Both NY Marine and Travelers issued insurance policies to D'Onofrio, and NY Marine seeks an order declaring that Travelers must provide coverage and a defense under its Policy to D'Onofrio; that Travelers is liable to NY Marine for all defense costs NY Marine has incurred to date and for future defense costs; and that Travelers is liable to pay any reasonable settlement or judgment resulting from the personal injury lawsuit. The Parties filed cross-motions for summary judgment.  For the reasons set forth below, Plaintiff's motion for summary judgment is **DENIED** and Defendant's motion for summary judgment is **GRANTED**.

## INTRODUCTION

Travelers and NY Marine both issued insurance policies to D'Onofrio that covered, to some degree, personal injury related to a construction project at the Hudson River Park that

involved the MOBRO 94 crane barge.  An employee of D'Onofrio claims he was injured on the MOBRO 94 barge and brought suit against D'Onofrio in April 2014.  D'Onofrio provided notice of the lawsuit to NY Marine and sought a defense.  In December 2014, Travelers received notice of the lawsuit from NY Marine.  To date, D'Onofrio has not provided Travelers formal notice of the lawsuit, nor has he requested a defense under the Travelers Policy.  The Travelers Policy includes a clause that requires prompt notice from the insured of any occurrence which may result in loss, damage and/or expense for Travelers and of any legal papers or documents related to such occurrence.  The notice provided to Travelers was both insufficient—i.e., D'Onofrio never provided notice of either the injury or the lawsuit—and untimely—i.e., Travelers did not learn about the injury for almost two years and the lawsuit for more than seven months.

Generally in New York, an insured's failure to give notice of a claim within the time specified in the policy will not invalidate the claim, unless the insurance company can show that it was prejudiced by the insured's failure to give timely notice.  *See* N.Y. Ins. Law §3420(a)(5). One exception to this rule applies to insurance policies regarding ocean going vessels.  If the MOBRO 94 crane barge is an ocean going vessel, the insured's failure to give notice vitiates the claim, without the need for Travelers to show prejudice.  For the reasons that follow, the Court finds that the MOBRO 94 crane barge is an ocean going vessel.  Therefore, the notice of occurrence provision is a condition precedent to Travelers' liability under its policy.  NY Marine's claims fail.

## BACKGROUND

### I.    Factual Background

The following factual summary consists of only undisputed material facts ("UMF") unless otherwise indicated.  These facts are, in significant part, copied from the Parties' Rule 56.1

Statements.  Where the facts are subject to legitimate dispute, they are construed in favor of the non-moving party. *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993).[1]

Travelers issued an Ocean Marine insurance policy to D'Onofrio General Contractors Corp. ("D'Onofrio") effective May 13, 2012 through May 13, 2013.[2] UMF ¶1.  The policy covered "[l]iability for loss of life of, or personal injury to, or illness of, any person, <u>excluding, however, unless otherwise agreed by endorsement hereon</u>, liability under any Compensation Act to any employee of the Assured, (other than a seaman) or in case of death to his beneficiaries or others." ECF No. 25-1 (the "Travelers Policy") at 23.  The Policy provides that "in the event of any occurrence which may result in loss, damage and/or expense for which this Assurer is or may become liable, the Assured will use due diligence to give prompt notice thereof and forward to the Assurer as soon as practicable after receipt thereof, all communications, process, pleadings and other legal papers or documents relating to such occurrences." *Id.* at 27.  The Policy also includes a Navigation Warranty, which provides that: "the vessel(s) be confined to New York Harbor and the coastal and inland waters of New York, New Jersey and Connecticut, or held covered at rates to be agreed." *Id.* at 21.

NY Marine issued an insurance policy to D'Onofrio effective July 9, 2012 through July 9, 2013 (the "NY Marine Policy").[3] UMF ¶30.  D'Onofrio entered into a contract with the Hudson River Park Trust ("HRPT") to assist in the construction of a bulkhead at the Hudson River Park. UMF ¶6.  This contract between D'Onofrio and HRPT included an Indemnification clause. *Id.* at

---

[1] References to the Rule 56.1 statements are presumed to incorporate counterparty responses as well as the documents and deposition testimony cited therein. Unless otherwise indicated, a standalone citation to a 56.1 Statement represents that this Court has overruled any objections and deemed the underlying factual allegation undisputed.

[2] Policy number ZOH-10R46632-12-ND.

[3] Policy number GL201200000161.

¶39. D'Onofrio entered into a contract with its wholly-owned subsidiary Diego Construction, Inc. ("Diego") in which Diego agreed to perform and furnish all work, labor, services and tools connected to D'Onofrio's work at Hudson River Park. *Id.* at ¶7.

On February 11, 2013, Matthew Lenio, an employee of Diego, claims that he was injured on the MOBRO 94 crane barge, which was owned by D'Onofrio and scheduled under the Travelers Policy. *Id.* at ¶¶ 3, 8. Specifically, Lenio alleges that he slipped on snow and/or ice on the crane barge while moving between the MOBRO 94 and a materials barge at the Project site. *Id.* at ¶8, 46; *see also* ECF No. 37-3 at ¶43.

On April 29, 2014, Mr. Lenio and his wife filed a lawsuit in New York Supreme Court. *Id.* at ¶10. D'Onofrio provided notice of the lawsuit to New York Marine and sought a defense pursuant to the NY Marine Policy. *Id.* at ¶14. ProSight Specialty Insurance, the managing general agent for NY Marine denied coverage under the NY Marine Policy. *Id.* at ¶15. On October 9, 2014, NY Marine agreed to undertake D'Onofio's defense as to all asserted claims in the Lenio lawsuit, but reserved all rights under the NY Marine Policy. *Id.* at ¶54. On December 16, 2014, ProSight Specialty reported the existence of the lawsuit to Travelers' wholesale insurance broker, which then reported the lawsuit to Travelers on January 2, 2015. *Id.* at ¶¶17, 18. Travelers sought information regarding the injury, and on April 6, 2015 received notice from D'Onofrio's agent National Insurance Brokerage of New York that "per the insured, Matthew Lenio was not injured on a barge." *Id.* at ¶21. On April 30, 2015, Travelers denied coverage because "the plaintiff did not fall on barge insured under our policy." *Id.* at ¶22. Travelers' denial letter included a reservation of rights in which it reserved its "rights to assert new and additional bases under the policy or otherwise for its coverage position," reserved "the right to modify or supplement this position," and reserved "[a]ll rights which [Travelers] may have under the terms of [the] policy

4

and at law."[4] ECF No. 25-10 at 2.  D'Onofrio did not object, challenge, or otherwise respond to Travelers' declination of coverage. UMF at ¶23.

On April 16, 2018 NY Marine contacted Travelers to demand that Travelers confirm coverage and indemnify NY Marine for its defense of D'Onofrio. *Id.* at  ¶24.  NY Marine filed the instant action on February 25, 2019. ECF No. 1.  The Court held a conference with the Parties on June 6, 2019, after which it ordered the Parties to "engage in limited discovery relating to notice and any other discreet issues requiring limited discovery." Order, ECF No. 12.  On October 23, 2019, the Court granted the Parties leave to file cross-motions for summary judgment. ECF No. 22.  Travelers and NY Marine filed their motions for summary judgment on January 10, 2020 and January 11, 2020 respectively, ECF Nos. 20–28, 33–37; their opposition briefs on January 30, 2020 and January 31, 2020 respectively, ECF Nos. 40–41, 42–45; and their reply briefs on February 14, 2020, ECF Nos. 46, 47–48.

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and "the moving party is entitled to a judgment as a matter of law.*" Cortes v. MTA New York City Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (quoting A*nderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)) (internal quotation marks omitted); *see also* FED. R. CIV. P. 56(a).  Material facts are facts that may affect the outcome of the case. *Anderson*, 477 U.S. at 248.  An issue of fact is

---

[4] The full text of the reservation in Travelers' Letter reads: ""TRAVELERS does not intend this letter to be a comprehensive statement of its coverage position and expressly reserves it [sic] rights to assert new and additional bases under the policy or otherwise for its coverage position, whether based upon facts presently known or not.  We also reserve the right to modify or supplement this position.  This letter does not, nor is it intended to waive any of the rights TRAVLERS may have under the terms of your insurance policy or at law.  This letter is not intended to be an exhaustive statement of all exclusions and/or conditions which may be applicable.  All rights which TRAVELERS may have under the terms of your insurance policy and at law are specifically reserved." ECF No. 25-10 at 2.

"genuine" when a reasonable fact finder can render a verdict in the nonmoving party's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (internal quotation marks omitted).  "[T]he court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) (quoting *Marvel Characters v. Simon*, 310 F.3d 280, 285–86 (2d Cir. 2002)).  If the moving party meets its burden, the burden shifts to the non-moving party to bring forward "specific facts showing a genuine issue for trial." *Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co.*, No. 14-CV-7354, 2016 WL 4120635, at *4 (S.D.N.Y. July 22, 2016) (citation omitted); *see also* FED. R. CIV. P. 56(c).  The non-moving party "may not rest upon mere allegation[s] or denials of his pleadings," *Anderson*, 477 U.S. at 259.  Rather, the non-moving party must "designate specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and these facts must be "admissible in evidence." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) (quoting FED. R. CIV. P. 56(e)).  "The mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment," *Anderson*, 477 U.S. at 247 (emphasis in original), and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 50 (internal citations omitted).  "If there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether

either party is entitled to judgment as a matter of law." *Gen. Ins. Co.*, 2016 WL 4120635, at *4

(citing *Heublein, Inc.*, 996 F.2d at 1461).

## DISCUSSION

The Parties dispute whether Travelers received adequate notice of the injury and lawsuit,

and whether Travelers waived its right to disclaim coverage for inadequate notice.  The Court

concludes that the notice provided to Travelers was insufficient and untimely as a matter of law.

Under the New York law applicable here, the notice of occurrence provision is a condition

precedent to an insurer's liability under the policy.  Since the notice was untimely and insufficient,

Travelers cannot be held liable under the Travelers Policy.  Accordingly, NY Marine's claims fail

and the Court does not proceed to analyze the respective insurance policies and liabilities.

I.   **New York Insurance Law §3420 Does Not Apply**

The Parties dispute whether New York Insurance Law §3420 applies in this case.  "Absent

a specific federal rule, federal courts look to state law for principles governing maritime insurance

policies." *Commercial Union Ins. Co. v. Flagship Marine Servs., Inc.*, 190 F.3d 26, 30 (2d Cir.

1999).[5]  §3420 lays out provisions that must be included in policies and contracts that insure

against liability for injury to a person or property. *See* N.Y. Ins. Law §3420.[6]  Under §3420, "[a]

provision that failure to give any notice required to be given by such policy within the time

---

[5] The Parties proceed under the assumption that New York law applies to the construction of their
respective insurance policies, and the Court agrees. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584
F.3d 33, 39 (2d Cir. 2009) ("The parties' briefs assume that New York substantive law governs
the issues . . . presented here, and such implied consent is, of course, sufficient to establish the
applicable choice of law.") (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir.
2001)).
[6] "No policy or contract insuring against liability for injury to person . . . or against liability for
injury to, or destruction of, property shall be issued or delivered in this state, unless it contains in
substance the following provisions or provisions that are equally or more favorable to the insured
and to judgment creditors so far as such provisions relate to judgment creditors." N.Y. Ins. Law
§3420.

prescribed therein shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide timely notice has prejudiced the insurer." *Id.* at §3420(a)(5). However, §3240 does not apply to "the kinds of insurances set forth in paragraph three of subsection (b) of section two thousand one hundred seventeen of this chapter." *Id.* at §3420(i). §2117(b), in turn, covers "marine insurance of the following kind or kinds," including "insurance in connection with ocean going vessels against any of the risks specified in paragraph twenty-one of subsection (a) of section one thousand one hundred thirteen of this chapter." N.Y. Ins. Law. §2117(b)(3)(B).  Finally, §1113(a)(21) includes "marine protection and indemnity insurance," which encompasses "insurance against, or against legal liability of the insured for, loss, damage or expense arising out of, or incident to, the ownership, operation, chartering, maintenance, use, repair or construction of any vessel, craft or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness or death or for loss of or damage to the property of another person." N.Y. Ins. Law. §1113(a)(21).

Given that §3420 does not apply to "ocean going vessels," the operative question here is whether MOBRO 94 is an "ocean going vessel" under New York law. *See, e.g.*, *DeGeorge v. ACE Am. Ins. Co.*, No. 07-CV-2761, 2008 WL 180786, at *5 (S.D.N.Y. Jan. 17, 2008) ("§3420(d) does not apply to policies of insurance in connection with ocean-going vessels.") (citation omitted). "The determination of whether a vessel is an 'ocean-going vessel' is made by reference to the 'express geographic limits expressed in the Declarations portion of the Policy,' rather than to the factual 'ocean going' capabilities of the particular vessel." *Id*; *see also Ins. Co. of N. Am. v. Zaglool*, 526 F. Supp. 2d 361, 366 (E.D.N.Y. 2007) ("Whether a vessel is an ocean-going vessel depends not on the capabilities of a particular vessel, but rather on the relevant policy's 'Policy Territory.'") (citation omitted).

The Navigation Warranty in the Travelers Policy provides that "the vessel(s) be confined to New York Harbor and the coastal and inland waters of New York, New Jersey and Connecticut, or held covered at rates to be agreed." ECF No. 25-1 at 21.  Courts have not had the opportunity to consider this particular language in determining whether a vessel is ocean-going, and there remains a "dearth of case law in this area" as well as "a paucity of research material defining the term 'oceangoing vessel.'" *Becker v. Allcity Ins. Co.*, No. 99-CV-2371, 2000 WL 33179289, at *3 (E.D.N.Y. June 2, 2000).  District courts have found that policies that confine insurance to "non-tidal waters of the continental United States and Canada," *Gfroerer v. Ace Am. Ins. Co.*, No. 03-CV-0866, 2004 WL 2966173, at *3 (W.D.N.Y. Dec. 22, 2004), *aff'd*, 184 F. App'x 26 (2d Cir. 2006*)*, "land, tributaries, inland lakes, bays and rivers of the continental United States or Canada," *Progressive Ne. Ins. Co. v. Am. Ins. Co.*, No. 99-CV-8998, 2001 WL 959183, at *4 (S.D.N.Y. Aug. 21, 2001), and "Inland & Costal Waters of Hudson River between Verrazano Narrows Bridge & Albany, Including East River & Western Long Island Sound," *Hartford Fire Ins. Co. v. Mitlof*, 123 F. Supp. 2d 762, 767 (S.D.N.Y. 2000), do not render a vessel "ocean going."  On the other hand, district courts have found that policies including the language "Atlantic coastwise" render the vessels they cover "ocean going." *Ins. Co. of N. Am. v. Zaglool*, 526 F. Supp. 2d 361, 366 (E.D.N.Y. 2007); *see also DeGeorge v. ACE Am. Ins. Co.*, No. 07-CV-2761, 2008 WL 180786, at *5 (S.D.N.Y. Jan. 17, 2008) ("Having contracted for authorization to sail along the Atlantic Coast, Plaintiff cannot now claim that his vessel is not 'ocean going' and rely on §3420(d) in his motion for summary judgment.").  The language of the Travelers Policy, which covers both the "coastal and inland waters of New York, New Jersey and Connecticut," implies that the MOBRO 94 was authorized to navigate outside of solely inland waterways and instead could also operate in the Atlantic Ocean. *Cf Hartford Fire Ins. Co. v. Mitlof*, 123 F. Supp. 2d 762, 767 (S.D.N.Y. 2000)

(concluding that a vessel was not "ocean going" because "the parties clearly intended that [the vessel] would travel solely on inland waterways.").

NY Marine points the Court to other statutory definitions of "coastal waters" as instructive. Specifically, NY Marine cites Article 14 of the New York Ocean and Great Lakes Ecosystem Conservation Act, which defines "coastal waters" as "lakes Erie and Ontario, the St. Lawrence and Niagara rivers, the Hudson river south of the federal dam at Troy, the East river, the Harlem river, the Kill von Kull, and Arthur Kill, Long Island sound, and the Atlantic ocean, and their connecting water bodies, bays, harbors, shallows, and marshes." N.Y. Envtl. Conserv. Law §14-0105. Notably, this definition includes "the Atlantic ocean," which comports with the view that MOBRO 94 was an ocean going vessel.  NY Marine also argues that the MOBRO 94 "does not fit within the purpose of the N.Y. Ins. Law exception, as the MOBRO 94, is largely immobile (studded by steel shafts into the riverbed), and is primarily used as a work and storage platform." NY Marine Opposition Memo (ECF No. 42) ("NY Marine Opp.") at 15.  This argument is unpersuasive.  The purpose of the §3420 exception is "to protect marine insurance companies by precluding direct action claims against marine insurance policies; nothing in the legislative history indicates an intent to make the distinction plaintiffs urge between insurance for seaworthy or operational vessels on the one hand and that for 'disabled' or 'derelict' vessels on the other." *Becker v. Allcity Ins. Co.*, No. 99-CV-2372, 2000 WL 33179289 (E.D.N.Y.) at *3.

## II.    **Notice Was Insufficient and Untimely**

"Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is condition precedent to an insurer's liability under the policy." *Pfeffer v. Harleysville Grp., Inc.*, 502 F. App'x 28, 31 (2d Cir. 2012) (summary order) (quoting *Sparacino v. Pawtucket Mut.*

*Ins. Co.*, 50 F.3d 141, 143 (2d Cir. 1995)).[7]  When a notice provision "requires that notice of an occurrence or claim be given promptly" or "requir[es] notice 'as soon as possible,' notice must be given within a reasonable time in view of all of the facts and circumstances." *Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co.*, 421 F. App'x 52, 56 (2d Cir. 2011) (summary order). "Whether an insured's notice is timely depends on (1) when the insured's notice obligation arose and (2) whether the insured promptly gave notice within the timeframe of the policy." *Travelers Indem. Co. v. Northrup Grumman Corp.*, 416 F. Supp. 3d 290, 296 (S.D.N.Y. 2019), on reconsideration in part, No. 16-CV-8778, 2020 WL 1469550 (S.D.N.Y. Mar. 26, 2020). "Whether a delay is reasonable is an issue of fact, but courts may find a delay unreasonable as a matter of law if no excuse is given or if the excuse is not credible." *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 337 (S.D.N.Y. 2004).

The Travelers Policy contains a "Prompt Notice of Claim" warranty which provides that: "[I]n the event of any occurrence which may result in loss, damage and/or expense for which this Assurer is or may become liable, the Assured will use due diligence to give prompt notice thereof and forward to the Assurer as soon as practicable after receipt thereof, all communications, process, pleadings and other legal papers or documents relating to such occurrences." UMF at ¶4. Matthew Lenio was injured on February 11, 2013 and he filed his lawsuit on April 29, 2014.  Both the injury and the lawsuit triggered D'Onofrio's obligation to give prompt notice to Travelers. *See Cambridge Realty Co., LLC*, 421 F. App'x at 56 ("The 'duty to give an insurer notice arises when, from the information available relative to the accident, an insured could glean a reasonable

---

[7] Since §3420 does not apply, the Court applies New York common-law. *See Indian Harbor Ins. Co. v. City of San Diego*, 586 F. App'x 726, 729 (2d Cir. 2014) (summary order) ("If the New York legislature had intended to change the common law for all policies, it could have done so. We have previously declined to apply §3420 outside the geographic scope dictated by the statutory language.").

possibility of the policy's involvement.'") (citing *Figueroa v. Utica Nat'l Ins. Grp.*, N.Y.S.2d 556, 557 (2d Dep't 2005)).   Travelers first received notice of Lenio's injury and the lawsuit on December 16, 2014, when ProSight (the managing general agent for NY Marine) reported the existence of the injury and lawsuit to Travelers' wholesale insurance broker, who then reported the lawsuit to Travelers on January 2, 2015.

The notice provided to Travelers was both insufficient and untimely as a matter of law. The notice was insufficient because D'Onofrio never informed Travelers of the injury or lawsuit, and he did not seek out a defense pursuant to the Travelers Policy.   Indeed, while D'Onofrio did provide notice of the lawsuit to NY Marine and sought a defense pursuant to the NY Marine Policy, even when Travelers denied coverage, he did not object, challenge, or otherwise respond to Travelers' declination.   To this day, D'Onofrio has not provided notice of the injury or lawsuit to Travelers nor has he sought coverage under the Travelers Policy.   The Travelers Policy requires the insured to provide notice, not another insurance company, and the notice provided by NY Marine is insufficient. *See Webster ex rel. Webster v. Mount Vernon Fire Ins. Co.*, 368 F.3d 209, 214 (2d Cir. 2004) ("[T]he district court overlooked the fundamental difference between the insurer's obligations when the insured provides notice, albeit late, and an insurer's obligations when an insured fails to provide any notice at all."); *see also Northrop Grumman Corp.*, 3 F. Supp. 3d at 105 ("The fact that an insurer may have actual notice from another source does not relieve the insured of its separate contractual obligation to provide notice."); *Same Day Delivery Serv., Inc. v. Penn Star Ins. Co.*, 151 F. Supp. 3d 380, 387 (S.D.N.Y. 2015) ("An insurer is not deemed to have received notice by learning of the occurrence giving rise to a claim from a third party.").[8]

---

[8] NY Marine claims that it could also give notice to Travelers because New York law provides for notice to be given by an "injured person." NY Marine Opp. at 17 (citing N.Y. Ins. Law

The notice provided by NY Marine was not only insufficient, but it was also untimely.  The accident occurred on February 11, 2013 and the lawsuit was filed April 29, 2014.  NY Marine did not provide notice of the injury or lawsuit until, at the earliest, December 16, 2014, when ProSight reported the injury and lawsuit to Travelers' wholesale insurance broker, passed this information on to Travelers on January 2, 2015.  This notice, provided almost two years after the injury and over seven months after the initiation of the lawsuit, even if it was sufficient, was untimely. *See, e.g.*, *Northrop Grumman Corp.*, 3 F. Supp. 3d at 103 ("Some courts have held delays of fewer than 54 days to be untimely as a matter of law.") (citing *Am. Home Assur. Co. v. Republic Ins. Co.*, 984 F.2d 76, 78 (2d Cir. 1993)); *see also Same Day Delivery Serv., Inc.*, 151 F. Supp. 3d at 386 ("New York courts have routinely held that when an insurance policy requires notice to be provided as soon as practicable, delays of as little as one to four months were not within a reasonable period of time as a matter of law.").

NY Marine argues that Travelers cannot demonstrate prejudice based on the alleged late notice under §3420 of the New York Insurance Law.  For the reasons set forth in Section I above, §3420 does not apply to this case.  Under New York law, when §3420 does not apply, the common law rule for insurance contracts is a no-prejudice rule. *See Indian Harbor Ins. Co. v. City of San Diego*, 972 F. Supp. 2d 634, 650 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 726 (2d Cir. 2014); *see also Briggs Ave. LLC v. Ins. Corp. of Hannover*, 11 N.Y.3d 377, 381–82 (2008) ("[A]n insurer that does not receive timely notice in accordance with a policy provision may disclaim coverage, whether it is prejudiced by the delay or not.").  Accordingly, Travelers does not need to allege or demonstrate that it was prejudiced by the insufficient and untimely notice.

§3420(a)(3)).  For the reasons set forth above, §3420 does not apply to this case.  Moreover, NY Marine does not cite any authority to support the claim that it was an "injured person" under §3420.

Finally, "New York courts have 'recognized that there may be circumstances that excuse a failure to give timely notice, such as where the insured has a good-faith belief of nonliability, provided that belief is reasonable.'" *Cambridge Realty Co., LLC*, 421 F. App'x at 56 (quoting *Great Canal Realty Corp. v. Seneca Ins. Co.*, 5 N.Y.3d 742, 743 (2005)); *see also Abner, Herrman & Brock, Inc.*, 308 F. Supp. 2d at 337 ("A delay in giving notice may be excused if the insured lacked knowledge of the occurrence or had a reasonable belief in nonliability."). Neither D'Onofrio nor NY Marine advance any justification or reasons for why D'Onofrio has, to date, not given notice to Travelers, and why NY Marine waited to give notice to Travelers. *See Cambridge Realty Co.*, 421 F. App'x at 56 ("[T]he insured bears the burden of establishing the reasonableness of the proffered excuse.") (quoting *Great Canal Realty Corp.*, 5 N.Y.3d at 744). Since neither D'Onofrio nor NY Marine advance an excuse, the Court finds that the notice requirement in the Travelers Policy was not excused and that NY Marine's almost two-year late notice of the injury and seven month late notice of the lawsuit was insufficient and untimely. *See Green Door Realty Corp. v. TIG Ins. Co.*, 329 F.3d 282, 287 (2d Cir. 2003) ("[A] delay may be unreasonable as a matter of law when either no excuse is advanced or the proffered excuse is meritless.") (quoting *Olin Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 724 (2d Cir.1992)).

III.    **Travelers Did Not Waive a Late-Notice Disclaimer**

Travelers disclaimed coverage for Lenio's injury in its denial letter on April 30, 2015 ("Travelers' Letter") and NY Marine argues that this disclaimer waived Travelers' right to now assert new and additional grounds for disclaimer, including the inadequacy of notice. Travelers' Letter disclaimed coverage because "the plaintiff did not fall on barge [sic] insured under our policy and thus coverage was not triggered under the marine policy issued by Travelers." ECF No. 25-10 at 1. The Letter also included a reservation of rights, in which Travelers reserved its "rights

14

to assert new and additional bases under the policy or otherwise for its coverage position," reserved "the right to modify or supplement this position," and reserved "[a]ll rights which [Travelers] may have under the terms of [the] policy and at law." *Id.* at 2.

"Courts may find waiver where, for example, an insurance company disclaims coverage for failure to satisfy one condition precedent but neglects to assert other such conditions." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 95 (2d Cir. 2002) (citation omitted); *see also H.S. Equities, Inc. v. Hartford Acc. & Indem. Co.*, 661 F.2d 264, 270 (2d Cir. 1981) ("[A] repudiation of liability by an insurer on the ground that the loss is not covered by the policy operates as a waiver of the notice requirements contained in the policy.")[9]  Under New York law, however, an express reservations of rights "preclude[s] arguments both as to waiver and as to equitable estoppel." *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006); *see also Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP*, 277 F. Supp. 2d 245, 254 (S.D.N.Y. 2003) ("When an insurer reserves its right to deny coverage, estoppel and waiver may not be inferred.").  This applies even when an insurance company disclaims coverage on one basis

---

[9] The Court pauses to note that Travelers' Letter is better read as a disclaimer of coverage rather than as a repudiation.  "Where an insurer 'shape[s] its conduct in accordance with the provisions of the contract' and 'explain[s] the denial of coverage with reference to policy provisions and exclusions,' this is a 'disclaimer' of coverage, not a 'repudiation' of the contract of insurance." *Nat'l R.R. Passenger Corp. v. Steadfast Ins. Co.*, No. 06-CV-6072, 2009 WL 562610, at *13 (S.D.N.Y. Mar. 5, 2009), *report and recommendation adopted*, No. 06-CV-6072, 2009 WL 1873719 (S.D.N.Y. June 30, 2009) (citing *Seward Park Housing Corp. v. Greater New York Mutual Insurance Co.*, 43 A.D.3d 23, 32 (1st Dep't 2007)).  In this case, Travelers did not repudiate the binding effect of the Travelers Policy.  Instead, Travelers' Letter cited the text of the Policy in explaining that Lenio's injury was not covered. *See Jacobson v. Metro. Prop. & Cas. Ins. Co.*, 672 F.3d 171, 177 (2d Cir. 2012) ("At its heart, the doctrine of repudiation rests on notions of waiver and estoppel: the rationale of the doctrine is that an insurer may not rely on the terms of a policy whose binding effect it has disclaimed, and an insured should not be held to strict compliance with claim rules where the insurer has announced that it will not pay any claim under the policy regardless of the insured's compliance.").  Nevertheless, Travelers reservation of rights is dispositive regardless of whether Travelers' Letter is read as a disclaimer or repudiation.

but does not assert, until later, another basis for disclaimer. *See Women's Integrated Network, Inc. v. U.S. Specialty Ins. Co.*, No. 12-CV-7072, 2013 WL 4799265, at *4 (S.D.N.Y. Aug. 9, 2013) ("Under New York law, '[t]he purpose of a reservation of rights is to prevent an insured's detrimental reliance on the defense provided by the insurer. The reservation is a sufficient preventative to reliance even if the insurer later disclaims on a basis different from the ground originally asserted in the reservation of rights.'") (quoting *Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co.*, 28 A.D.3d 32, 37–38 (1st Dep't 2006)).

Travelers' reservation of rights precludes NY Marine's waiver argument. Travelers' reservation was broad and encompassed future disclaimer based on insufficient or untimely notice. *See* Travelers' Letter at 2 ("[Travelers] reserves its rights to assert new and additional bases under the policy or otherwise for its coverage position."); *see also New York State Elec. & Gas Corp. v. Century Indem. Co.*, 767 F. App'x 188, 190 (2d Cir. 2019) (summary order) (rejecting arguments regarding waiver of late-notice defense in part because the insurer "explicitly reserved all of its rights under the relevant policy."); *accord National Restaurants Management, Inc. v. Executive Risk Indem., Inc.*, 758 N.Y.S.2d 624, 625 (1st Dep't 2003) (noting that "[s]ince defendant at all relevant times expressly reserved its right to disclaim, [] its initial disclaimer on a different ground from that ultimately invoked" did not constitute a waiver). Although the untimely and insufficient notice issue was known to Travelers at the time it sent the disclaimer letter, its reservation covered additional bases for its coverage position "whether based upon facts presently known or not." *Id.* at 2; *cf. State of N.Y. v. AMRO Realty Corp.*, 936 F.2d 1420, 1433 n.13 (2d Cir. 1991) ("The phrase contained in [the Insurer's] disclaimer letter—'[w]e reserve our rights to rely on additional reasons for disclaimer should they become apparent in the future'—cannot be read to preclude waiver in

the circumstances here, as the late-notice defense . . . was evident at the time [the Insurer] issued its disclaimer letter.").

NY Marine relies primarily on *TIG Ins. Co. v. Town of Cheektowaga*, 142 F.Supp.2d 343 (W.D.N.Y. 2000) and *Olin Corp. v. Ins. Co. of N. Am.*, No. 84-CV-1968, 2006 WL 509779 (S.D.N.Y. Mar. 2, 2006) to argue that a "blanket reservation of rights to unspecified defenses" does not save Travelers from constructive waiver of its notice defense. *See* NY Marine Opp. at 6. Both of these cases are inapposite.  In *TIG* and *Olin*, the insurer reserved specific rights and defenses, and did not include the notice defense as one of the enumerated, reserved defenses. *See Olin Corp.*, 2006 WL 509779, at *4 ("By reserving their rights on these specific grounds while omitting any mention of a defense based upon the failure of plaintiff to provide timely notice, the [Insurer] waived their right to disclaim coverage based upon plaintiff's alleged untimely notification.").  In this case, on the other hand, Travelers broadly reserved "[a]ll rights . . . under the terms of your insurance policy and at law." Travelers' Letter at 2.  This reservation, unlike that in *Olin* or *TIG*, includes disclaimer based on insufficient or untimely notice. *Cf. XL Specialty Ins. Co. v. Lakian*, 243 F. Supp. 3d 434, 442 (S.D.N.Y. 2017) ("[T]he facts of *Olin Corp.* are readily distinguishable. First, the insurer in *Olin Corp.* stated that it 'reserve[d] their right re coverage and punitive damages,' whereas XL's letter states that it 'reserves *all rights* under the Policy and at law.' Surely XL needed not articulate every possible coverage defense in its January letter.") (citations omitted).  Accordingly, the Court concludes that Travelers' reservation of rights preserved disclaimer on the basis of insufficient and/or untimely notice.

## CONCLUSION

D'Onofrio did not provide sufficient or timely notice of the incident or the lawsuit to Travelers.  This unexcused delay and deficiency excuses Travelers' obligation under the Travelers

Policy. *See Same Day Delivery Serv., Inc.*, 151 F. Supp. 3d at 385 ("New York courts have, on numerous occasions, ruled that an insured's inexcusable delay in providing notice of a claim excuses the insurer's obligation to provide coverage.").   Accordingly, NY Marine's motion for summary judgment is **DENIED** and Travelers' motion for summary judgment is **GRANTED**. The Clerk is respectfully directed to close this case.

**SO ORDERED.**
**Dated:  September 9, 2020**
       **New York, New York**

                                          **ANDREW L. CARTER, JR.**
                                          **United States District Judge**